No. 23-1501, -1554

IN THE

# United States Court of Appeals for the Federal Circuit

APPLE INC.,

*Appellant,*

LG ELECTRONICS INC., LG ELECTRONICS USA, INC., GOOGLE LLC,

*Appellees,*

*v.*

GESTURE TECHNOLOGY PARTNERS LLC,

*Cross-Appellant.*

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
Nos. IPR2021-00921, IPR2022-00092, and IPR2022-00362

**REPLY BRIEF OF APPELLANT APPLE INC.
AND RESPONSE BRIEF OF APPLE INC., LG ELECTRONICS
INC., LG ELECTRONICS USA, INC., AND GOOGLE LLC**

Stanley J. Panikowski
DLA PIPER US LLP
4365 Executive Drive, Suite 1100
San Diego, CA 92121

*Counsel for LG Electronics Inc.
and LG Electronics USA Inc.*

Erika Arner
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001

*Counsel for Google LLC*

Robbie Manhas
Melanie L. Bostwick
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Counsel for Apple Inc.*

*Additional Counsel on Inside Cover*

Matthew D. Satchwell
DLA PIPER US LLP
444 West Lake Street, Suite 900
Chicago, IL 60606

*Counsel for LG Electronics Inc. and*
*LG Electronics USA Inc.*

Daniel Cooley
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190

*Counsel for Google LLC*

Paul R. Hart
ERISE IP, P.A.
5299 DTC Blvd.
Suite 1340
Greenwood Village, CO 80111

Adam P. Seitz
Clifford T. Brazen
ERISE IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211

*Counsel for Apple Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-1501, -1554 |
| **Short Case Caption** | Apple Inc. v. Gesture Technology Partners, LLC |
| **Filing Party/Entity** | Apple Inc. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/27/2023

Signature: /s/ Robbie Manhas

Name: Robbie Manhas

i

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable             ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)    ☐   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable             ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

iii

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-1501, 23-1554 |
| **Short Case Caption** | Apple Inc. v. Gesture Technology Partners, LLC |
| **Filing Party/Entity** | LG Electronics Inc.; LG Electronics USA, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/27/2023

Signature: /s/ Stanley J. Panikowski

Name: Stanley J. Panikowski

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| LG Electronics Inc. | | |
| LG Electronics USA, Inc. | | LG Electronics Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

v

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| Gianni Minutoli | | |
| Paul Steadman | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1501, 23-1554

**Short Case Caption** Apple Inc. v. Gesture Technology Partners, LLC

**Filing Party/Entity** Google LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/27/2023

Signature: /s/ Daniel C. Cooley

Name: Daniel C. Cooley

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Google LLC | | XXVI Holdings Inc. |
| | | Alphabet Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable       ☐ Additional pages attached

| | | |
|---|---|---|
| Mingi Jin | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable       ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATES OF INTEREST ............................................................. i

TABLE OF AUTHORITIES .................................................................. xii

INTRODUCTION .................................................................................. 1

ARGUMENT ON APPLE'S APPEAL ..................................................... 5

I.    The Board Erroneously Determined That Apple Had Not Shown Claims 4, 11, And 18 Unpatentable By Miscasting Apple's Obviousness Challenge In Terms Of Inherency ............................................................................ 5

    A.    Gesture Technology agrees that inherency is the wrong question. .............................................................. 6

    B.    Gesture Technology is incorrect that the Board avoided an erroneous inherency framing. ..................... 7

II.    The Board Erroneously Determined That Apple Had Not Shown Claims 4, 11, And 18 Unpatentable By Improperly Failing To Consider Material Evidence. ........... 16

    A.    Gesture Technology is incorrect that the Board considered the evidence at issue ................................ 17

    B.    Gesture Technology's position that the Board could have excluded—but did not exclude—the evidence at issue is unavailing. ................................................. 20

III.    This Court Should Reverse Or At Least Vacate The Board's Decision As To Claims 4, 11, And 18. ...................... 24

STATEMENT OF THE ISSUES ON GESTURE TECHNOLOGY'S CROSS-APPEAL ............................................................................ 30

SUMMARY OF ARGUMENT ON GESTURE TECHNOLOGY'S CROSS-APPEAL ............................................................................ 30

ARGUMENT ON GESTURE TECHNOLOGY'S CROSS-APPEAL ...... 38

I.     Substantial Evidence Supports The Board's Findings
       That Numazaki Satisfies The Disputed Limitations Of
       Claims 1-3, 5-10, And 12-17. ............................................... 38

       A.     Substantial evidence supports the Board's finding
              that Numazaki discloses the claimed sensor. ............. 39

       B.     Substantial evidence supports the Board's finding
              that Numazaki teaches the claimed forward-facing
              portion. ........................................................................ 48

II.    Substantial Evidence Supports The Board's Finding Of
       Motivation To Combine For Claims 1-3, 5-10, And 12-
       17. ................................................................................................ 50

       A.     Substantial evidence supports the Board's finding
              that a skilled artisan would have been motivated
              to combine Numazaki's embodiments based on
              Nonaka. ........................................................................ 51

       B.     Gesture Technology's challenges—which merely
              rehash factual arguments that the Board fully
              considered and rejected—are unavailing. ................... 52

III.   The Board Had Jurisdiction Over The Expired '949
       Patent. ....................................................................................... 59

CONCLUSION ....................................................................................... 65

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariosa Diagnostics v. Verinata Health, Inc.*,
   805 F.3d 1359 (Fed. Cir. 2015) .............................................. 20, 22, 25

*Asetek Danmark A/S v. CMI USA Inc.*,
   852 F.3d 1352 (Fed. Cir. 2017) ......................................................... 42

*BASF Corp. v. Ingevity S.C., LLC*,
   No. 2022-1129, 2023 WL 4115908 (Fed. Cir. June 22, 2023) ............ 20

*Belden Inc. v. Berk-Tek LLC*,
   805 F.3d 1064 (Fed. Cir. 2015) ......................................................... 23

*Bos. Sci. Scimed, Inc. v. Cordis Corp.*,
   554 F.3d 982 (Fed. Cir. 2009) ........................................................... 56

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*,
   419 U.S. 281 (1974) ........................................................................... 50

*Bradium Techs. LLC v. Iancu*,
   923 F.3d 1032 (Fed. Cir. 2019) ......................................................... 28

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ........................................................................... 26

*Celgene Corp. v. Peter*,
   931 F.3d 1342 (Fed. Cir. 2019) ......................................................... 62

*Ceramica Regiomontana, S.A. v. United States*,
   810 F.2d 1137 (Fed. Cir. 1987) ......................................................... 50

*In re Chapman*,
   595 F.3d 1330 (Fed. Cir. 2010) ......................................................... 25

*Collabo Innovations, Inc. v. Sony Corp.*,
   778 F. App'x 954 (Fed. Cir. 2019) ............................................... 61, 62

*Columbia Broad. Sys., Inc. v. United States*,
  316 U.S. 407 (1942) ............................................................ 10

*Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*,
  850 F.3d 1302 (Fed. Cir. 2017) ........................................ 42

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ............................................................ 45

*Corephotonics, Ltd. v. Apple Inc.*,
  84 F.4th 990 (Fed. Cir. 2023) .................................... 15, 19

*Corning v. Fast Felt Corp.*,
  873 F.3d 896 (Fed. Cir. 2017) ...................................... 25, 26

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
  261 U.S. 24 (1923) .............................................................. 60

*Cuozzo Speed Techs., LLC v. Lee*,
  579 U.S. 261 (2016) ............................................................ 61

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021) ........................................ 43

*Dell Fed. Sys., L.P. v. United States*,
  906 F.3d 982 (Fed. Cir. 2018) .......................................... 10

*Donner Tech., LLC v. Pro Stage Gear, LLC*,
  979 F.3d 1353 (Fed. Cir. 2020) ........................................ 20

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012) .......................................... 42

*In re Gartside*,
  203 F.3d 1305 (Fed. Cir. 2000) ........................................ 50

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*,
  655 F.3d 1291 (Fed. Cir. 2011) ........................................ 64

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
  362 F.3d 1367 (Fed. Cir. 2004) ........................................ 43

*Google LLC v. Koninklijke Philips N.V.*,
  795 F. App'x 840 (Fed. Cir. 2020) ....................................... 29

*Grit Energy Sols., LLC v. Oren Techs., LLC*,
  957 F.3d 1309 (Fed. Cir. 2020) .......................................... 26

*Hill-Rom Servs., Inc. v. Matal*,
  716 F. App'x 996 (Fed. Cir. 2017) ....................................... 15

*Hologic, Inc. v. Minerva Surgical, Inc.*,
  764 F. App'x 873 (Fed. Cir. 2019) ....................................... 57

*Homeland Housewares, LLC v. Whirlpool Corp.*,
  865 F.3d 1372 (Fed. Cir. 2017) .......................................... 26

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
  849 F.3d 1034 (Fed. Cir. 2017) .......................................... 47

*In re Jolley*,
  308 F.3d 1317 (Fed. Cir. 2002) .......................................... 45

*Jones v. Wilkie*,
  918 F.3d 922 (Fed. Cir. 2019) ........................................... 19

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
  797 F.3d 1025 (Fed. Cir. 2015) .......................................... 64

*In re Kotzab*,
  217 F.3d 1365 (Fed. Cir. 2000) .......................................... 26

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) ..................................................... 59

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination
  Unit*,
  507 U.S. 163 (1993) ..................................................... 60

*Malcolm v. United States*,
  No. 2023-1084, 2023 WL 5012116 (Fed. Cir. Aug. 7, 2023) .............. 54

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
  812 F.3d 1284 (Fed. Cir. 2015) .......................................... 61

*Merck Sharp & Dohme Corp. v. Wyeth LLC,*
   792 F. App'x 813 (Fed. Cir. 2019) ...................................................... 15

*Ex Parte Motoren,*
   1 U.S.P.Q.2d 1655 (B.P.A.I. 1986) .................................................... 62

*In re Mouttet,*
   686 F.3d 1322 (Fed. Cir. 2012) .......................................................... 57

*In re Mulder,*
   716 F.2d 1542 (Fed. Cir. 1983) .......................................................... 52

*Netflix, Inc. v. DivX, LLC,*
   No. 2022-1083, 2023 WL 2298768 (Fed. Cir. Mar. 1, 2023)... 21, 22, 25

*Nucor Corp. v. United States,*
   414 F.3d 1331 (Fed. Cir. 2005) .......................................................... 50

*In re Nuvasive, Inc.,*
   842 F.3d 1376 (Fed. Cir. 2016) .......................................................... 18

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
   138 S. Ct. 1365 (2018) .......................................................... 60, 61, 63

*Packard Press, Inc. v. Hewlett-Packard Co.,*
   227 F.3d 1352 (Fed. Cir. 2000) .......................................................... 15

*Packers Plus Energy Servs. Inc. v. Baker Hughes Oilfield*
   *Operations, LLC,*
   773 F. App'x 1083 (Fed. Cir. 2019) .................................................... 57

*Progressive Cas. Ins. Co. v. Liberty Mut. Ins. Co.,*
   625 F. App'x 552 (Fed. Cir. 2015) ...................................................... 47

*Provisur Techs., Inc. v. Weber, Inc.,*
   No. 2021-1851, 2022 WL 17688071 (Fed. Cir. Dec. 15, 2022) ........... 28

*Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.,*
   896 F.3d 1322 (Fed. Cir. 2018) .......................................................... 63

*Schwendimann v. Neenah, Inc.,*
   82 F.4th 1371 (Fed. Cir. 2023) ...................................................... 46, 49

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) ................................................................ 15, 22

*Sony Corp. v. Iancu*,
  924 F.3d 1235 (Fed. Cir. 2019) ........................................... 63, 64

*Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*,
  955 F.3d 994 (Fed. Cir. 2020) .................................................. 52

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
  8 F.4th 1349 (Fed. Cir. 2021) .................................................. 39

*In re Universal Elecs., Inc.*,
  No. 2022-1716, 2023 WL 5219774 (Fed. Cir. Aug. 15, 2023) ............ 57

*In re Van Os*,
  844 F.3d 1359 (Fed. Cir. 2017) ................................................ 15

*Velander v. Garner*,
  348 F.3d 1359 (Fed. Cir. 2003) ........................................... 43, 55

*W. Union Co. v. MoneyGram Payment Sys., Inc.*,
  626 F.3d 1361 (Fed. Cir. 2010) ................................................ 29

*Wheatland Tube Co. v. United States*,
  161 F.3d 1365 (Fed. Cir. 1998) ................................................ 50

*Wonderland Nurserygoods Co. v. Baby Trend, Inc.*,
  727 F. App'x 1017 (Fed. Cir. 2018) ......................................... 11

## Statutes

35 U.S.C. § 2(a)(1) .................................................................. 61

35 U.S.C. § 311(b) .................................................................. 60

35 U.S.C. § 311(c) .................................................................. 60

35 U.S.C. § 315 ...................................................................... 61

## Rules and Regulations

37 C.F.R. § 1.510(a) (1981) .................................................... 62

37 C.F.R. § 1.530(d) (1981) ....................................................................... 63

**Other Authorities**

Manual of Patent Examining Procedure (4th ed. July 1981),
   https://tinyurl.com/z66kxx4n ...................................................... 62, 63

# INTRODUCTION

Gesture Technology's brief confirms that the Board erred in failing to hold the claims reciting the fixed limitation (dependent claims 4, 11, and 18) unpatentable for obviousness.  Conversely, the Board correctly struck down every claim that does not recite the fixed limitation (claims 1-3, 5-10, and 12-17), and Gesture Technology does not show otherwise.

***Apple's appeal.***  As to the Board's rejection of Apple's obviousness challenge to the claims reciting the fixed limitation, Gesture Technology offers self-defeating responses that underscore the two overarching problems in the Board's analysis.

First, Gesture Technology agrees that the issue before the Board was conventional obviousness, and that inherency was a "red herring." RB22.  Gesture Technology thereby backpedals from its encouragement of an inherency analysis at the oral hearing before the Board.  Only then was inherency broached in this case for the first time ever by the APJ who ultimately authored the final written decision here.  The Board followed suit in the decision, where the agency committed a framing error by analyzing the fixed limitation in terms of inherent disclosure.  Gesture Technology nevertheless attempts to escape the

framing error by arguing that the Board analyzed the fixed limitation as a matter of ordinary obviousness instead of inherency. But everything that Gesture Technology musters on that reading of the Board's decision is either inconclusive or to the opposite effect. For example, Gesture Technology invokes the Board's stringent focus on whether Numazaki's sensor and camera "are" fixed as claimed and what the petition said about Numazaki "requir[ing]" that fixedness. Appx34-35. But the Board's focus on whether the fixedness claimed is necessarily present in Numazaki's disclosures is precisely the problem. That focus left no room for inquiry into whether a skilled artisan reading Numazaki would have been led to the fixed limitation, regardless of whether Numazaki requires the fixedness claimed in every possible instance of Numazaki's device.

Second, on the question of whether the Board ignored material evidence that Apple submitted on reply, Gesture Technology's position is internally inconsistent and meritless. On one hand, Gesture Technology urges that that the Board rejected Apple's obviousness challenge regarding the fixed limitation based on "a single-minded focus on the Petition" and the "evidence set forth in it." RB22. On the other

hand, Gesture Technology insists that the Board "considered" Apple's reply evidence on the fixed limitation in rejecting Apple's challenge. RB27. Those positions are irreconcilable. Moreover, in arguing that the Board considered Apple's reply evidence, Gesture Technology concedes that the Board did not exclude the evidence. RB31-32. The lack of exclusion means that the only conceivable way that the Board's rejection of Apple's challenge may stand is if the Board factored the evidence into its rejection. But nothing that Gesture Technology relies upon in the final written decision shows that the Board engaged with Apple's reply evidence. Indeed, even if the Board had considered the evidence, reversal would still be required, because the evidence permits only one conclusion: that the fixed limitation would have been obvious to a skilled artisan reading Numazaki.

At the very least, as to each error, Gesture Technology fails to identify anything in the final written decision showing that an error did not occur. Consequently, because the errors are prejudicial, this Court should at a minimum vacate and remand for further proceedings as to claims 4, 11, and 18. In such a remand, the Board would have to consider the issue of obviousness that Apple raised and the reply

evidence that Apple submitted and clarify its ruling on the fixed limitation accordingly.

**_Gesture Technology's cross-appeal._**[1]  Outside of reversal or vacatur based on the errors in the final written decision that Apple's appeal raises, the Board's decision should not be disturbed.

Gesture Technology's cross-appeal starts with flawed factual attacks on the Board's determination of unpatentability as to the claims not reciting the fixed limitation.  These unpersuasive substantial-evidence arguments seek to overturn two sets of well-supported and well-explained Board findings: (1) that Numazaki satisfies certain claim limitations and (2) that a skilled artisan would have been motivated to combine Numazaki's embodiments.  Gesture Technology's arguments fail because they either rehash contentions that the Board fully considered and rightly rejected or raise new contentions that Gesture Technology never presented to the Board in the first place.

Gesture Technology's cross-appeal ends with an equally unpersuasive jurisdictional argument seeking vacatur of the final

---

[1] LG and Google, appellees here, join only the portions of this brief addressing Gesture Technology's cross-appeal.

written decision in its entirety: that the Board lacks jurisdiction over

expired patents.  On that basis, Gesture Technology contends that the

Board could not exercise jurisdiction over the '949 patent here, because

the patent expired approximately a year before Apple filed its petition.

This argument flouts the governing statutory regime, is incompatible

with precedent, and fails on its own terms.

*Bottom line.*  This Court should reverse or at least vacate the

Board's determination that Apple did not show dependent claims 4, 11,

and 18 unpatentable for obviousness.  This Court should affirm the

Board's decision in all other respects.

### ARGUMENT ON APPLE'S APPEAL

### I.    The Board Erroneously Determined That Apple Had Not Shown Claims 4, 11, And 18 Unpatentable By Miscasting Apple's Obviousness Challenge In Terms Of Inherency.

As Apple's opening brief explains (OB28-45), the Board's

determination that Apple had not shown claims 4, 11, and 18 to be

unpatentable hinged on the Board's improper framing of the parties'

dispute concerning the fixed limitation as an inherency dispute.

Specifically, the Board inappropriately bypassed the question over

which the parties fought—whether a skilled artisan reading Numazaki

5

would have arrived at the fixed limitation—by replacing it with a different question that the Board itself injected into the proceedings at the oral hearing: whether Numazaki inherently disclosed the fixed limitation. OB29-42. Compounding that error, the Board failed to fully analyze the question of inherency that it imposed, by skipping the inherency inquiry's natural-result prong. OB42-45.

In response, Gesture Technology agrees that inherency is the wrong question. § I.A. And although Gesture Technology argues that the Board's rejection of Apple's challenge was not premised on that question, Gesture Technology is mistaken. § I.B.

## A. Gesture Technology agrees that inherency is the wrong question.

Gesture Technology does not argue that the Board justifiably engaged in an inherency analysis. *See* RB21-26. On the contrary, Gesture Technology concedes that inherent disclosure is the wrong question. RB21 ("The Board specifically acknowledged that [Apple] was not relying on inherency."); RB22 (agreeing that "an inherency analysis" was a "red herring"); RB26 ("[T]he Board acknowledged that [Apple] was relying on [ordinary] obviousness.").

6

This is a notable departure from Gesture Technology's position during the oral hearing before the Board. As Apple's opening brief sets forth (OB19, 35-36), at that eleventh-hour stage, the APJ who would ultimately author the final written decision inserted inherency into the proceedings. Appx438 (Scanlon, J.). Gesture Technology's counsel responded by encouraging the inherency framing, notwithstanding that, undisputedly, no one had mentioned inherency before the authoring judge's question. Appx440; OB19. In turn, a different member of the then-constituted panel—who did not end up a member of the panel that rendered the final written decision, Appx1; Appx2425—demurred. He called inherency "a red herring." Appx446 (Anderson, J.); *see* OB19-20, 38. Gesture Technology now agrees that inherency was a "red herring." RB22.[2]

## B.    Gesture Technology is incorrect that the Board avoided an erroneous inherency framing.

Although Gesture Technology concedes that the parties did not frame their arguments to the Board in terms of inherency and further

---

[2] Nor does Gesture Technology dispute—or even address—Apple's argument that neglecting the inherency doctrine's natural-result prong would be improper if the doctrine were implicated. *See* OB42-45.

agrees that obviousness in this case should not be assessed as a matter of inherent disclosure, Gesture Technology denies that the Board committed a framing error. That is because Gesture Technology denies that the Board applied an inherency analysis. RB21-26. As Gesture Technology puts it, "[t]he Board in this case analyzed [Apple]'s obviousness analysis and never focused on the red herring—an inherency analysis." RB22. That is incorrect.

**1.** Apple's opening brief details how the Board engaged in an inherency-only analysis. OB30. The final written decision on its face suggests that the Board understood Apple to have argued "inherency." Appx34. And the decision's substance tracks, because the Board analyzed only whether Numazaki's sensor and camera are "*necessarily … fixed relative to each other.*" Appx34 (emphasis added).

**2.** Gesture Technology responds that, "save one instance of mentioning the word 'inherency,'" "the Board never mention[ed] the inherency doctrine or the 'necessarily present' prong of the inherency doctrine." RB23. None of this helps Gesture Technology.

As an initial matter, the "one instance" in which the final written decision mentions the inherency doctrine reflects the Board's belief that

8

the doctrine governed.  The decision remarks that, "[a]t the oral hearing, counsel for [Apple] indicated that [Apple]'s position was not an inherency argument" but rather a conventional obviousness argument based on what a skilled artisan would have understood from Numazaki. Appx34 (citing Appx438).  The decision then *rejects* Apple's counsel's characterization, stating that "[t]he Petition, *however*, does not reference" the non-inherency analysis to which Apple's counsel referred. Appx34 (emphasis added).  The decision's rejection of Apple's counsel's basis for resisting an inherency framing naturally implies that the Board believed that an inherency framing controlled.

Moreover, the final written decision substantively invokes the inherency doctrine's "necessarily present" prong by zeroing in on whether Numazaki's sensor and camera are "*necessarily* … fixed relative to each other." Appx34 (emphasis added).  The decision accordingly states that, "*[w]ithout more, the mere fact* that [the sensor] and [the camera] are arranged in parallel and have overlapp[ed] fields of view does not establish that the structures *are* fixed." Appx34 (emphases added).  By contrast, the decision does not discuss whether Numazaki's structures *could have been* fixed as claimed and whether a

9

skilled artisan reading the reference *would have* understood it to call for that fixedness. The former path—the one the Board took—sounds in inherency; the latter path—the one the Board forsook—sounds in obviousness. *See* OB31-32; *see also* OB33-34 & n.4. Against this, the Board's elision of the precise legal term "necessarily present" does not carry the day. What matters is the substance of the Board's decision, not the presence or absence of any label. *See Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 416 (1942) ("The particular label placed upon [an order] by [an agency] is not necessarily conclusive, for it is the substance of what the [agency] has purported to do and has done which is decisive."); *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) ("When determining whether a court committed legal error in selecting the appropriate legal standard, we determine which legal standard the tribunal *applied*, not which standard it recited.").

The final written decision's adoption of an inherency framing is further indicated by the authoring judge's question regarding inherency at the oral hearing, which the decision references. *See* Appx34 (citing Appx438). To be sure, a judge's oral-hearing statements are not automatically relevant to parsing the content of a later written decision.

But in the present context—where the decision relies on the oral exchange at issue, Appx34-35—such statements should be given interpretive weight. *See Wonderland Nurserygoods Co. v. Baby Trend, Inc.*, 727 F. App'x 1017, 1020 (Fed. Cir. 2018) (recognizing that, when a final written decision "include[s]" "statements made by Administrative Patent Judges at the oral hearing," such statements may shed light on whether the Board adopted a particular position).

**3.** Meanwhile, Gesture Technology's affirmative interpretation of the final written decision does not hold up. Gesture Technology argues that the Board "based its conclusions on [Apple]'s failure to show … that … Numazaki *would have been understood* to teach a fixed relationship." RB21-22 (emphases altered).

Contrary to Gesture Technology's gloss, the final written decision never analyzes the fixed limitation in terms of what "would have been understood" from Numazaki, whether in form or in substance. *See* Appx32-35. Instead, as explained above (at 9-10), the decision rests on Numazaki's disclosures alone "not establish[ing] that" Numazaki's sensor and camera "*are* fixed." Appx34 (emphasis added). This finding is framed in terms of what Numazaki itself requires from its device; the

11

finding says nothing about what a skilled artisan would have taken away from Numazaki's disclosures. And in accord, the decision evinces a focus on what Numazaki's disclosures "necessarily mean." Appx34.

Gesture Technology notes (RB21) the final written decision's statement that "[t]he Petition … does not reference any … analysis" by Apple's expert regarding what a skilled artisan would have understood from Numazaki "in connection with the subject matter of claims 4, 11, and 18." Appx34; *see* Appx438. But that statement does not support Gesture Technology's understanding of the decision. Rather, as discussed above (at 9), the statement indicates that the Board engaged in an inherency-based analysis, because the statement rejects Apple's counsel's oral explanation why inherency was not at issue.

Gesture Technology also observes (RB21) what the final written decision adds in rejecting Apple's counsel's resistance to an inherency framing. Specifically, Gesture Technology relies on the decision's elaboration that "[t]he portions of the Petition" pertaining to the fixed limitation "discuss the overlapping fields of view but [do] not assert that overlapping fields of view *require* the structures to be fixed with respect to one another." Appx35 (emphasis added). This elaboration just

12

further suggests that the Board improperly applied an inherency analysis. Here, again, the decision focuses on what Numazaki "require[s]," not what a skilled artisan reading Numazaki would have gleaned.

Unavailing too is Gesture Technology's invocation (RB23) of the final written decision's general statement that "we determine [Apple] has not shown by a preponderance of the evidence that the combination of Numazaki and Nonaka renders obvious claim 4, 11, or 18." Appx35. This nondescript remark reflects nothing more than the Board's bottom-line—and incorrect—conclusion on Apple's challenge to the claims at issue. Inherency can arise in the obviousness context, OB30-31, and Apple undeniably raised an obviousness challenge generally, so the decision's usage of the word "obvious" sheds no light on the present dispute (even if the mere recitation of such a label could control, which it cannot, *supra* 10).

All that remains is Gesture Technology's argument that the petition did not demonstrate that a skilled artisan reading Numazaki would have been led to the fixedness claimed. *See* RB19-22. Gesture Technology contends that the Board's rejection of Apple's challenge did

not rest on "a single-minded focus on inherency" but rather on "a single-minded focus on the Petition"—namely, a finding that the petition did not prove that Numazaki "would have been understood to teach a fixed relationship." RB21-22 (internal quotation marks omitted).

Gesture Technology's insistence that the Board rejected Apple's challenge by finding that the petition was insufficient to meet Apple's burden merely underscores the Board's error of failing to consider material reply evidence, *see* OB45-54, *infra* 17-18, not that the Board applied a proper obviousness analysis instead of erroneously limiting its analysis to inherency. To be sure, the final written decision states that "the *Petition* does not establish sufficiently" that Numazaki's sensor and camera "*are* fixed relative to one another." Appx34 (emphases added). As explained above (at 9-10), however, this statement's usage of "are" supports that the Board rested on lack of inherent disclosure. That the statement homes in on "the Petition" implies nothing to the contrary; it simply confirms that the Board committed an additional error by requiring the petition alone to sustain Apple's burden. *Infra* 17-18. After all, the Board "*must* consider all evidence and argument properly submitted in connection with the petitioner's reply," such that ignoring

nonexcluded reply material is an abuse of discretion. *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1003 (Fed. Cir. 2023) (emphasis added); *see* OB47, 50-54. Yet as Gesture Technology itself concedes, the Board did not exclude any of Apple's reply material on the fixed limitation. RB31 ("[T]he Board never ruled that any of [Apple]'s arguments should be disregarded for being untimely."); RB32 ("[T]he Board never ruled that that [Apple's reply] arguments contained impermissible new matter."); *see* OB45-49.

**4.** At the very least, "the Board's decision is too cryptic to survive judicial review." *Merck Sharp & Dohme Corp. v. Wyeth LLC*, 792 F. App'x 813, 818 (Fed. Cir. 2019). This Court "will not 'guess at the theory underlying the' Board's action, … or assume that the Board meant one thing when it said something else." *Hill-Rom Servs., Inc. v. Matal*, 716 F. App'x 996, 1004 (Fed. Cir. 2017) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947)). Thus, when this Court cannot ascertain whether a Board decision is founded on a lawful basis, this Court "consistently vacate[s] and remand[s] for further proceedings." *In re Van Os*, 844 F.3d 1359, 1362 (Fed. Cir. 2017) (collecting cases); *cf. Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1358 (Fed.

Cir. 2000) (same for Trademark Trial and Appeal Board).  Such vacatur

and remand is the minimum remedy here:  Nothing that Gesture

Technology has pointed to in the final written decision, nor anything

else that the decision contains, enables this Court to discern that the

Board rejected Apple's challenge based on a permissible rationale.

## II.   The Board Erroneously Determined That Apple Had Not Shown Claims 4, 11, And 18 Unpatentable By Improperly Failing To Consider Material Evidence.

As Apple's opening brief also explains (OB45-54), the Board's

determination that Apple had not shown claims 4, 11, and 18 to be

unpatentable rests on the further error of failing to consider material

evidence.  In particular, the Board staked its rejection of Apple's

challenge solely on its view of what "the Petition" itself "establish[ed]."

Appx34; *see supra* 14.  Under that limited examination, the Board

focused on the petition's citations to Numazaki while skirting over

Apple's reply evidence—a highly relevant supplemental declaration

from Apple's expert and key concessions from Gesture Technology's

expert.  *See* Appx34; OB46-49.  The Board thus concluded that,

"*[w]ithout more, the mere fact* that" Numazaki's sensor and camera "are

arranged in parallel and have overlapping fields of view does not establish that the structures are fixed." Appx34 (emphasis added).

Gesture Technology makes two responses. First, Gesture Technology argues that the Board considered the reply evidence. Second, Gesture Technology muses that, although the Board did not exclude the reply evidence, the Board could have done so. Neither response salvages the Board's rejection of Apple's challenge. § II.A-B.

## A.    Gesture Technology is incorrect that the Board considered the evidence at issue.

Gesture Technology primarily argues that the Board in fact accounted for the expert testimony set forth in Apple's reply. *See* RB26-32. That contention does not withstand scrutiny.

**1.** Gesture Technology's reading of the final written decision is internally inconsistent. As discussed above (at 13-14), in arguing that the Board did not adopt an inherency framing, Gesture Technology contends that the Board rejected Apple's challenge based on one thing only: what the petition itself showed. RB21-22. Gesture Technology is correct insofar as the Board deemed Apple to have "failed to meet its burden" based on "a single-minded focus on the Petition," RB22, which accords with the decision's statement that "the Petition" itself did not

17

"establish sufficiently" the fixedness claimed, Appx34; *see supra* 13-14. But that the Board had a "single-minded focus on the *Petition*," RB22 (emphasis added), is irreconcilable with Gesture Technology's later theory that the Board factored in Apple's *reply* evidence, *see* RB26-28; *supra* 13-14. To say that the Board's rejection of Apple's challenge rested on Apple's petition alone is simply another way of saying that the rejection did not consider Apple's reply evidence. *See supra* 13-14.

The better interpretation of the final written decision is that the Board meant what it said: It ruled on what the "the Petition" itself showed, thereby ignoring Apple's reply evidence. Appx34.

**2.** Nothing that Gesture Technology points to shows that the Board grappled with Apple's reply evidence.

Gesture Technology principally invokes the Board's bare recitation of the parties' arguments and evidence. *See* RB27-28, RB31 (citing Appx33-34). As Apple's opening brief points out (OB48), however, "summariz[ing] and reject[ing]" arguments and evidence is "not sufficient." *In re Nuvasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016).

Gesture Technology also says that "[t]he Board echoed its decision on institution in the FWD." RB30. But any such "echo[ing]" would

confirm, or at least be consistent with, disregard of Apple's reply evidence.  The institution decision *preceded* Apple's reply.

That just leaves Gesture Technology's observation that the Board "credited" Apple's expert's supplemental declaration as to "the capabilities of a PHOSITA" regarding a different limitation.  RB31 (citing Appx24); *see* Appx1778 ¶ 9 (credited portion of the supplemental declaration).  But the fact that the Board credited a portion of the supplemental declaration addressing a distinct issue in no way indicates that the Board factored in the declaration's separate testimony regarding the point disputed here.  *See Jones v. Wilkie*, 918 F.3d 922, 927 (Fed. Cir. 2019) ("The fact that the [agency] considered *some* of the [evidence] does not excuse the fact that it failed to consider *all* of [it]." (emphases added; internal quotation marks and ellipsis omitted)); *see also Corephotonics*, 84 F.4th at 1003 ("[T]he Board must consider *all* evidence and argument properly submitted." (emphasis added)).  The unconsidered reply evidence concerns a precise issue: how fixedness would have been obvious from Numazaki's disclosure of the precise configuration of its fifth embodiment's camera and sensor.  *See* OB14-18, 33, 43, 56; Appx1783-1784 ¶¶ 14-15 (citing Appx1809-1810).

Specifically, the reply evidence that the Board ignored demonstrates that fixedness would have been obvious to ensure the embodiment's express purpose of retaining only useful image information (because fixedness locks in place the precise configuration that Numazaki discloses, which defines the image information that is deleted versus retained). *See id.* The Board's partial consideration of Apple's supplemental declaration as to different issue does not make up for the Board's failure to consider the portion of the declaration relevant here.

**3.**  Given the above, it is at least "unclear whether the Board meaningfully considered all of [Apple's] arguments and evidence," which calls for vacatur and remand. *Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1359, 1362 (Fed. Cir. 2020); *accord BASF Corp. v. Ingevity S.C., LLC*, No. 2022-1129, 2023 WL 4115908, at *4-5 (Fed. Cir. June 22, 2023); *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365-66 (Fed. Cir. 2015)*; supra* 15-16.

**B.    Gesture Technology's position that the Board could have excluded—but did not exclude—the evidence at issue is unavailing.**

As noted above (at 15), Gesture Technology admits that the Board did not exclude Apple's reply material.  RB31-32 (conceding that "the

Board never ruled" that Apple's reply contained "untimely" material or "impermissible new matter"). Nevertheless, Gesture Technology theorizes, in unelaborated fashion, that the Board *could* have excluded Apple's reply evidence. *See* RB30-31; *see also* RB20. Gesture Technology's theorizing appears merely academic, as Gesture Technology does not ask this Court to do anything based upon it. *See* RB30-32. To the extent that Gesture Technology means to suggest that the Board's error in failing to consider Apple's reply material was harmless, however, Gesture Technology is mistaken.

The error must be harmful because the Board did not exceed its discretion in allowing the reply evidence. Inquiry into harmless error, after all, is made "under [a] *Chenery*-respecting standard." *Netflix, Inc. v. DivX, LLC*, No. 2022-1083, 2023 WL 2298768, at *5 (Fed. Cir. Mar. 1, 2023). And that *Chenery*-respecting standard forbids this Court's assessment of harmlessness from displacing the Board's freedom to resolve open questions of fact and procedure: Although this Court "may 'affirm if an erroneous portion of an agency's ruling is ultimately non-prejudicial, *i.e.*, not material to the bottom-line result given other portions of the agency's ruling," this Court "must not [itself] make

factual and discretionary determinations that are for the agency to make." *Id.* (quoting *Ariosa*, 805 F.3d at 1365); *accord Chenery*, 332 U.S. at 196; OB52-53. Thus, because the Board at least had the discretion to allow the reply evidence as it did—especially because Gesture Technology never asked the Board to exclude the evidence, *see* Appx375-377—the strictures of *Chenery* foreclose this Court from excluding the evidence in the first instance. *Netflix*, 2023 WL 2298768, at *5; *Ariosa*, 805 F.3d at 1365. If anything, the Board was compelled to allow the reply evidence, because excluding it would have been an abuse of discretion. *See* OB49-54 (explaining how Apple had the right to present the reply evidence both as a matter of expanding upon the petition and as a matter of responding to Gesture Technology's arguments); *see also* OB39-42 (similar).

Punctuating the point, even as Gesture Technology presents the issue, there is no basis to infer harmlessness. Gesture Technology does not contend that the Board exceeded its discretion in permitting Apple's reply evidence. RB30-32. Gesture Technology professes merely that "the Board was *free* to ignore this evidence *if it chose* to do so." RB31 (emphases added).

Nor is the calculus changed by Gesture Technology's passing—and incorrect—assertion that, "according to [Apple], the Board was free to conclude that Numazaki … did not render obvious the 'fixed in relation to' limitation without considering expert opinion." RB26 (citing OB38). Gesture Technology mischaracterizes the cited portion of Apple's opening brief. Apple has never conceded that the Board could reject the obviousness of the fixed limitation without considering the expert testimony that Apple submitted. On the contrary, Apple's opening brief argues that the limitation is simple enough that the prima facie case of obviousness could be sustained by Numazaki alone—the underlying point being that Apple had no petition-stage obligation to present expert testimony on the limitation. OB38-39, 41-42, 51; *see Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1079 (Fed. Cir. 2015). The fact that Apple maintains that it was not obligated in its petition to furnish expert testimony proving that the fixed limitation would have been obvious does not help Gesture Technology. Nothing about that position implies that, after the Board disagreed at institution that Numazaki proved the limitation's obviousness—and particularly after Gesture Technology submitted its patent owner response with expert testimony

23

purporting to show nonobviousness—the Board could in its final written decision disregard critical expert testimony pushing in the other direction that Apple adduced on reply.  OB47; *supra* 14-15, 22; *see* OB41-42, 50-51.  Indeed, Apple's opening brief argues the precise opposite.  *E.g.*, OB41-42, 51, 53-54.

## III.   This Court Should Reverse Or At Least Vacate The Board's Decision As To Claims 4, 11, And 18.

As Apple's opening brief explains (OB54-58), the Board's decision as to claims 4, 11, and 18 should be reversed or vacated because, separately and together, the Board's errors in constraining its analysis to inherent disclosure and in failing to consider material evidence were at least prejudicial.  And as discussed above (at 15-16, 20), even if this Court is simply unable to discern whether the Board committed either error, vacatur is required.  Either way, the decision cannot stand.

Gesture Technology does not address what remedy follows from either error.  Gesture Technology denies only that the errors occurred, not that, if either did occur, it was harmless.

At most, Gesture Technology incidentally touches on the question of harmlessness by arguing that "there was ample evidence to support the Board's conclusion" that Apple did not show that the fixed

limitation would have been obvious in light of Numazaki.  RB28; *see* RB28-30.  This characterization of the evidence is beside the point and inaccurate to boot.

The characterization is irrelevant because "ample evidence" is not absolutely controlling evidence—that is, evidence permitting no other result.  When this Court "cannot say with confidence that the Board would have reached the same conclusion in the absence of [an] error[]," the error is "indeed harmful" and requires vacatur.  *In re Chapman*, 595 F.3d 1330, 1339-40 (Fed. Cir. 2010); *accord Netflix*, 2023 WL 2298768, at *5; *Ariosa*, 805 F.3d at 1365; *supra* 15-16, 20.

The characterization also defies the actual state of the evidence.  As Apple's opening brief spells out (OB54-58), under an ordinary obviousness analysis, the only reasonable conclusion is that a skilled artisan reading Numazaki would have been led to the fixed limitation— which dictates reversal.  *See Corning v. Fast Felt Corp.*, 873 F.3d 896, 903 (Fed. Cir. 2017).  Thus, even if Gesture Technology were correct that the Board engaged in a conventional obviousness analysis and considered all the relevant evidence, the Board's rejection of Apple's

challenge to the claims reciting the fixed limitation must be overturned.
*See id.*

Gesture Technology tries to avoid this conclusion by improperly limiting its analysis to only a subset of the evidence.

Gesture Technology starts by quoting a snippet of its expert's declaration. RB28-29. But substantial evidence requires "more than a mere scintilla of evidence" and cannot be evaluated without considering parts of the record that "detract[]" from Gesture Technology's isolated quotation. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). Here, "[a]lthough [Gesture Technology] submitted [certain] expert testimony" that in a vacuum might support its position, this Court "'must disregard'" Gesture Technology's cherrypicked testimony because it "'is plainly inconsistent with the record'" as a whole. *Grit Energy Sols., LLC v. Oren Techs., LLC*, 957 F.3d 1309, 1322 n.5 (Fed. Cir. 2020) (quoting *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017)); *see Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or

when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); OB55-58.

Next, Gesture Technology presses that Numazaki "never discloses" that its sensor and camera "have or require *identical* fields of view" and urges that this lack of disclosure means that the two structures may move relative to each other. RB29-30. Numazaki's depiction of the structures' outputs, however, shows complete overlap:



Appx885; *see* OB9-10.

More fundamentally, even if Gesture Technology were correct that Numazaki allows partially overlapping fields of view and that the possibility of partial overlap could in turn permit the structures not to be fixed, *contra* OB57, that prospect would not suffice for Gesture

Technology to prevail.  Asking only whether Numazaki discloses having or requiring the fixedness claimed unduly limits the inquiry.  Gesture Technology recognized as much before the Board in acknowledging that the question in dispute includes what Numazaki would have "suggest[ed]" to a skilled artisan.  Appx377; *see* OB32-36 & n.4.  And Gesture Technology recognizes the same on appeal in conceding that ordinary obviousness is at issue.  *See supra* 6, 8, 11; *compare* RB21-22 (question is whether Numazaki "would have been understood to teach a fixed relationship"), *with Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1049 (Fed. Cir. 2019) (in determining obviousness, "a reference must be considered not only for what it expressly teaches, but also for what it fairly suggests" (internal quotation marks omitted)).[3]  Critical here at least as to what Numazaki would have suggested, even Gesture Technology's expert admitted that fixing Numazaki's precise placement of the fifth embodiment's sensor and camera would have furthered that

---

[3] *Accord* OB33-34 & n.4 (collecting cases); *cf. Provisur Techs., Inc. v. Weber, Inc.*, No. 2021-1851, 2022 WL 17688071, at *4 n.4 (Fed. Cir. Dec. 15, 2022) ("That the Board found claims obvious even though Weber argued the multifill limitation is disclosed completely in individual pieces of prior art is consistent with an obviousness inquiry.").

embodiment's express purpose of extracting only useful image information.  Appx1809-1810; *see* OB55-56.

Notably, Gesture Technology does not address its expert's concession, which is alone dispositive in Apple's favor.  *See* OB55-56. Gesture Technology instead pivots to its expert's partial-overlap assertion: "that movement of these two components … relative to each other does not *necessarily* result in [completely] non-overlapping fields of view."  RB30 (citing Appx1809; emphases altered).  But Apple has already answered why that notion, even if supported, is nonresponsive: that some overlap *might* be maintained in the face of minimal movement cannot defeat the undisputed—and indisputable—point that a skilled artisan would have recognized that fixing the sensor and camera relative to each other would have had the benefit of *ensuring* the overlap necessary for the fifth embodiment's purpose.  OB56-58 (citing on-point cases reversing determinations of nonobviousness, *Google LLC v. Koninklijke Philips N.V.*, 795 F. App'x 840, 844-46 (Fed. Cir. 2020), and *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1371-72 (Fed. Cir. 2010)).  Reversal is thus warranted.

## STATEMENT OF THE ISSUES
## ON GESTURE TECHNOLOGY'S CROSS-APPEAL

**I.**    As to the Board's determination that claims 1-3, 5-10, and 12-17 are unpatentable, whether substantial evidence supports the Board's findings that Numazaki discloses two limitations: (1) the claimed sensor and (2) the claimed forward-facing portion.

**II.**    As to the Board's determination that claims 1-3, 5-10, and 12-17 are unpatentable, whether substantial evidence supports the Board's finding of motivation to combine Numazaki's third, fifth, and eighth embodiments based on Nonaka's teachings.

**III.**    Whether the Board had jurisdiction over the '949 patent, which expired shortly before Apple filed its petition.

## SUMMARY OF ARGUMENT
## ON GESTURE TECHNOLOGY'S CROSS-APPEAL

**I.**  Gesture Technology's appeal begins by challenging, for lack of substantial evidence, the Board's findings that Numazaki satisfies two claim limitations.  Neither substantial-evidence challenge can succeed because neither demonstrates that the Board's findings were unreasonable.

***Electro-optical sensor.*** Gesture Technology's first challenges the Board's finding that Numazaki's reflected light unit 102 constitutes the claimed sensor. The claimed sensor is an "electro-optical sensor." Applying the plain and ordinary meaning of that term—because the parties did not ask for any construction—the Board found that the reflected light unit qualifies as such a sensor because Numazaki describes the unit as sensing light and converting the sensed light into electronic signals.  In other words, the Board found that the term reads on the unit because the unit performs an electro-optical-sensing function. In support, the Board relied upon various parts of Numazaki's disclosure, as well as Gesture Technology's expert's concession that the reflected light unit's photo-detection units are electro-optical sensors. Separately and together, everything that the Board invoked constitutes substantial evidence supporting its finding.

Against the heap of evidence justifying the Board's finding, Gesture Technology offers next to nothing.

Gesture Technology leads with an assertion that the existence of certain constituent parts in Numazaki's reflected light extraction unit, some of which have specialized timing and lighting requirements,

means that a skilled artisan would not have thought the unit to constitute the claimed sensor. Gesture Technology does not explain why. Instead, Gesture Technology cites its expert's declaration, which parrots its conclusory contention. The conclusory testimony invoked by Gesture Technology is no evidence at all, and certainly not evidence that compels a finding contrary to the one that Board arrived at after a comprehensive analysis of the record.

Gesture Technology's only other argument is that the Board erred in relying upon Gesture Technology's expert's acknowledgement that the reflected light unit's photo-detection units are electro-optical sensors. Gesture Technology suggests that this reliance was somehow paradoxical, because, in Gesture Technology's view, a skilled artisan would not consider an electro-optical sensor to consist of electro-optical sensors. This argument suffers from four independently fatal defects: (1) it is forfeited because Gesture Technology never made it to the Board; (2) it amounts to nothing more than attorney argument, which is not evidence; (3) it misapprehends the Board's decision, which expressly states that the Board did not decide whether the photo-detection units are themselves electro-optical sensors; and (4) at most, if it does show

error, the error was harmless, as the Board's reliance on various aspects of Numazaki's disclosure alone suffices to uphold the Board's finding.

***Forward-facing portion.*** Gesture Technology's second challenge concerns the claimed "forward-facing portion," of which the claimed sensor and camera must be part. Gesture Technology quarrels with the Board's finding that the combination of Numazaki's fifth and eighth embodiments satisfies the forward-facing-portion limitation by combining the former's sensor (reflected light unit 102) and camera (visible light photo-detection array 351) on the latter's photo-detection sensor unit 702. Gesture Technology does not dispute that the sensor and camera are forward facing and arranged in parallel with overlapping fields of view. But Gesture Technology nevertheless complains that the Board did not sufficiently explain how the sensor and camera are included on the same forward-facing portion via their common placement on the photo-detection sensor unit.

The initial problem with this argument is that it is forfeited—Gesture Technology never contended to the Board that the Numazaki combination's sensor and the camera would not have been located on the same forward-facing portion. Gesture Technology thus

33

unreasonably criticizes the Board for not addressing an issue that Gesture Technology itself failed to raise.

Gesture Technology's newfound argument also falls short on the merits. The Board's determination on Gesture Technology's same-portion issue can be reasonably discerned. The Board accepted that Numazaki's sensor and camera are forward facing and that they work together by being arranged in parallel and having overlapping fields of view. Given their precise configuration vis-à-vis each other, the Board naturally concluded that the sensor and camera's common placement on the photo-detection sensor unit would cause them to be located on the same forward-facing "portion"—a facially broad word that the Board did not construe (and that the parties did not ask be construed).

**II.** Gesture Technology proceeds to another set of substantial-evidence challenges—this time concerning motivation to combine—that fares no better. The Board found that a skilled artisan would have been motivated to combine Numazaki's third, fifth, and eighth embodiments based on Nonaka's teachings. Specifically, the Board found that a skilled artisan would have recognized from Nonaka that combining Numazaki's embodiments to use gestures to initiate video capture

would achieve benefits in terms of greater freedom of use, good portability, and deceased cost.  In making this finding, the Board carefully reviewed Nonaka and credited Apple's expert testimony. Gesture Technology insists, however, that the finding must be overturned based on two buckets of factual arguments that the Board considered and correctly rejected.

*Information input generation apparatus.*  Gesture Technology first rehashes arguments that it made to the Board regarding minute differences between the information input generation apparatuses of Numazaki's embodiments.  Gesture Technology refers to each embodiment's apparatus as its "IIGA."  Gesture Technology's arguments narrowly focus on isolated disclosures in Numazaki while denying a skilled artisan recourse to ordinary skill, creativity, and commonsense.  Such arguments run contrary to this Court's precedents holding that obviousness generally—and motivation to combine specifically—does not turn on bodily incorporation across disclosures.

Gesture Technology starts with a one-sentence objection accusing the Board of failing to explain particulars pertaining to how the combination's IIGA's reflected light extraction unit would work.

Gesture Technology accused Apple of the same failure to explain to the
Board, and the Board disagreed, crediting Apple's expert's explanation
addressing these technicalities.  The Board specifically highlighted
Apple's expert's undisputed testimony that a skilled artisan would have
recognized that there were no relevant technical barriers to the
combination proposed.  That discussion more than suffices to defeat
Gesture Technology's demand for explanation.

Gesture Technology also raises an IIGA-related objection
revolving around cameras—namely, how the IIGA in Numazaki's third
embodiment is configured as a gesture camera, whereas the IIGA in
Numazaki's fifth embodiment is configured as a chromakey camera.
Gesture Technology accuses the Board of failing to analyze this issue,
too.  But the Board did analyze the issue.  The Board found that
Gesture Technology's hairsplitting reduced to an inapposite argument
that Apple had not adduced a single Numazaki embodiment that
includes both cameras.  The Board rejected that argument because
Apple's theory was obviousness, relying on the combination of
Numazaki's embodiments instead.  And the Board found the differences

in the cameras to be no obstacle to obviousness, which the Board was more than entitled to find based on its review of the record.

*TV telephone.*  Gesture Technology's last substantial-evidence argument is that there would have been no motivation to modify Numazaki because its fifth embodiment uses a TV telephone that makes gesture signaling redundant.  The Board properly rejected this argument for two independent reasons.  First, the Board found that the argument could not get off the ground because Numazaki's fifth embodiment is not limited to a TV telephone.  Second, the Board found that, even if the fifth embodiment was so limited, a skilled artisan would have recognized the advantages of using remote gestures in other contexts.  Gesture Technology does not address either of these well-supported findings, each of which forecloses reversal under the substantial-evidence standard.

**III.**  Finally, Gesture Technology's argues that the Board could not exercise jurisdiction over the '949 patent because it expired approximately a year before Apple filed its petition.

Gesture Technology's jurisdictional argument is meritless.  It is inconsistent with the governing statutory regime, which does not limit

inter partes review based on a patent's expiration. The argument is also incompatible with the caselaw's rejections of various constitutional attacks on inter partes review.

And at the end of the day, the argument fails on its own terms. Gesture Technology predicates the argument on the supposed end of the public franchise represented by a patent. Yet Gesture Technology simultaneously recognizes that the owner of an expired patent may file infringement actions for past damages in district court. Thus, Gesture Technology's own logic should dictate that inter partes review is available to adjudicate whether what remains of the franchise should be allowed to persist. This Court's precedents confirm as much—by recognizing that an expired patent retains consequences for any infringement that occurred while the patent was alive.

The Board thus properly exercised jurisdiction here.

## ARGUMENT ON GESTURE TECHNOLOGY'S CROSS-APPEAL

## I. Substantial Evidence Supports The Board's Findings That Numazaki Satisfies The Disputed Limitations Of Claims 1-3, 5-10, And 12-17.

Gesture Technology challenges, as "not supported by substantial evidence," the Board's findings that Numazaki satisfies the claimed

sensor and the claimed forward-facing portion.  RB34-38; *cf. Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1359 (Fed. Cir. 2021) ("[W]hat a piece of prior art teaches presents a question of fact that is reviewed for substantial evidence.").  Gesture Technology is incorrect as to both the sensor, § I.A, and the portion, § I.B.

## A. Substantial evidence supports the Board's finding that Numazaki discloses the claimed sensor.

Gesture Technology "asserts that the Board's finding" that Numazaki's reflected light extraction unit discloses the claimed sensor "is not supported by substantial evidence."  RB34; *see* RB34-36. Gesture Technology is mistaken.

**1.**  The Board correctly found that Numazaki's "reflected light extraction unit 102 satisfies the claimed electro-optical sensor." Appx18; *see* OB11.  After noting that the patent did not define the term and that neither party proposed a construction, the Board thoroughly explored both parties' arguments and evidence and, "based on the full record," concluded that Numazaki disclosed an "electro-optical sensor" under that term's "plain meaning."  Appx18 & n.7.  Specifically, the Board found that Numazaki's reflected light unit qualifies as an electro-optical sensor because Numazaki describes the unit as "sens[ing] light

39

and convert[ing] the sensed light into electronic signals." Appx18. Put otherwise, the Board found that the unit constitutes the claimed sensor because the unit "provides an electro-optical sensing function." Appx18.

Substantial evidence, all of which the Board referenced and relied upon, supports the Board's factfinding. *See* Appx17-19. For example, the Board invoked Numazaki's disclosure that the reflected light extraction unit, via its photo-detection units, "'detects the optical image formed on the photo-detection plane and converts it into image signals corresponding to the received light amounts.'" Appx17 (quoting Appx945 11:20-23). Likewise, the Board found persuasive Numazaki's disclosure that "'reflected light extraction unit 102 sequentially outputs the reflected light amount for each pixel of the reflected light image' as analog signals that are amplified by amplifier 113 and converted into digital signals by converter 114." Appx18 (quoting Appx945 11:59-64). The Board credited as well Numazaki's disclosure that the reflected light extraction unit contains "a photo-detection section comprising CMOS sensors or CCD image sensors," Appx18 (citing Appx945 12:56-57; Appx947 15:23-27), which mirrors claim 7's elaboration that those components go with the sensor required, Appx57 15:50-52; *see* Appx760

40

¶ 35. And the Board also relied on Gesture Technology's expert's acknowledgment that the photo-detection units within that section "are electro-optical sensors." Appx18 (referring to Appx1800-1801; citing Appx947 15:52-16:3). Any single one of these pieces of the record provides substantial evidence because each alone permits the Board's finding that Numazaki's reflected light extraction unit performs an electro-optical-sensing function.

**2.** Gesture Technology argues against the Board's finding on two factual bases, neither of which has merit.

***Constituent parts generally.*** Gesture Technology first cryptically contends that the mere existence of constituent parts in Numazaki's reflected light extraction unit—a difference calculation unit and two photo-detection units, the latter having "specialized timing [and lighting] requirements"—means that "a PHOSITA would not have understood" the reflected light extraction unit to be the claimed sensor. RB35 (citing Appx1986-1987 ¶ 45).

Gesture Technology does not explain what it is about the fact of these constituent parts or the timing and lighting requirements that forecloses the reflected light extraction unit from being the claimed

sensor, let alone how Gesture Technology's argument could succeed when no claim construction was ever argued to or adopted by the Board. *See* RB35-36; *cf. Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1359-60 (Fed. Cir. 2017) (affirming "claim application" of unconstrued limitations under substantial-evidence review because factfinder could "reasonably reject" factual contentions that products could not satisfy them); *Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*, 850 F.3d 1302, 1311-12 (Fed. Cir. 2017) (similarly rejecting, under substantial-evidence review, a sufficiency-of-the-evidence challenge regarding a factfinder's application of an unconstrued limitation; "if [the challenging party had] 'desired such a narrow definition, it could (and should) have sought a construction to that effect'" (quoting *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012))).

Rather, Gesture Technology cites its expert's declaration, which does not explain any of this either.  RB35 (citing Appx1986-1987 ¶ 45). Relevant here, the cited portion offers nothing more than the following unelaborated assertion:  "Because of its 'difference calculation unit 111' and its two separate cameras having specific timing and lighting requirements, in my opinion, a POSITA would *not* have understood

42

Numazaki's 'reflected light extraction unit 102' as being the [claimed] 'electro-optical sensor.'"  Appx1987 ¶ 45 (one emphasis omitted).  The Board considered the cited portion of Gesture Technology's expert declaration and found it unpersuasive.  Appx17-18 (citing Appx1987 ¶ 45 and briefing parroting the same, Appx293; Appx366); *see* Appx19 ("[D]ifference calculation unit 111 merely processes the image signals produced by the … photodetection units and does not alter the electro-optical sensing function of reflected light extraction unit 102." (citing Appx945 11:53-56)).  The Board was more than entitled to do so.  *See Velander v. Garner*, 348 F.3d 1359, 1371 (Fed. Cir. 2003) ("It is within the discretion of the trier of fact to give each item of evidence such weight as it feels appropriate.").  If anything, the conclusory and impenetrable nature of the testimony deprives it of any weight at all.  *See cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) ("We do not accord weight to conclusory expert testimony.").[4]

---

[4] *See also Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1378 (Fed. Cir. 2004) ("It is not our task, nor is it the task of the district court, to attempt to interpret confusing or general testimony to determine whether a claim has been made out." (internal quotation marks and brackets omitted)).

Gesture Technology complains that the Board "focused on one core functionality" of the reflected light extraction unit—namely, its "'sens[ing] [of] light and convert[ing] [of] the sensed light into electronic signals.'" RB35 (quoting Appx18).  The focus made sense, however, because as the Board found, the functionality accords "with the plain meaning of an 'electro-optical sensor.'" Appx18.  Indeed, not only does the claim limitation on its face describe the sensor in terms of its electro-optical function, but Gesture Technology's expert described the sensor that way, too.  *See* Appx1798 (Gesture Technology's expert testifying that the "electro-optical sensor … convert[s] optical signals into electrical signals"); Appx1800 (similar).

Against the Board's well-supported factual finding regarding the reflected light extraction unit's electro-optical functionality, Gesture Technology poses solely an irrelevant generalization:  "[J]ust because two [things] perform, at some level, the same core functionality, does not mean they are interchangeable.  A train and a ship both transport passengers.  But that does mean a train would be classified as a ship." RB35-36.  Gesture Technology has adduced nothing compelling the conclusion that the Board engaged in such a conflation here.  *See supra*

44

41-44.  Gesture Technology did not ask the Board for any claim construction, let alone one requiring that the term "electro-optical sensor" mean something narrower than a device that functions to sense electro-optically.  So, the mere fact that Gesture Technology and its expert contended that the reflected light extraction unit does not qualify as an electro-optical sensor despite the performance of that function did not mandate that the Board had to agree.  *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence"); *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002) ("[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence."); *supra* 39-44.

**Photo-detection units specifically.**  Gesture Technology's second argument attacks the Board's reliance on Gesture Technology's expert's admission that the reflected light extraction unit's "'photo-

detection units 109, 110 are electro-optical sensors.'" RB36 (quoting Appx18); *see* Appx1800-1801.  Gesture Technology suggests that relying on this testimony would impermissibly make "the Board's position … that an electro-optical sensor (reflected light extraction unit) consists of one or more electro-optical sensors (photo-detections units)."  RB36. According to Gesture Technology, that position "cannot be correct" because, Gesture Technology asserts, "[a] PHOSITA would not consider an electro-optical sensor to consist of electro-optical sensors."  RB36. This argument fails for four independent reasons.

First, the argument is forfeited.  Gesture Technology never argued to the Board that "a PHOSITA would not consider an electro-optical sensor to consist of electro-optical sensors."  RB36; *see* Appx291-296; Appx366-367; *cf. Schwendimann v. Neenah, Inc.*, 82 F.4th 1371, 1380 (Fed. Cir. 2023) ("A party forfeits an argument that it failed to present to the Board." (internal quotation marks omitted)).

Second, Gesture Technology cites no evidence supporting its argument, RB36, and the Board's well-supported factfinding cannot be disturbed by mere attorney argument.  "Attorney argument is not

evidence." *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017).

Third, Gesture Technology's argument misreads the Board's ruling. Gesture Technology predicates the argument on "the Board's position [being] that an electro-optical sensor (reflected light extraction unit) consists of one or more electro-optical sensors (photo-detections units)." RB36. But the final written decision makes clear that the Board was agnostic on that front. Specifically, the decision states: "We do not address whether Numazaki's photo-detection units individually satisfy the claimed electro-optical sensor." Appx17 n.6. In context, then, the Board used Gesture Technology's expert's admission only to support a finding that the reflected light extraction as a whole constitutes the claimed sensor. *See* Appx18; *supra* 39-41.

Fourth, even if the Board's reliance on Gesture Technology's expert's admission was erroneous, the error was harmless. As recounted above (at 40-41), the Board based its finding on multiple parts of the record, each of which furnishes substantial evidence. *Cf. Progressive Cas. Ins. Co. v. Liberty Mut. Ins. Co.*, 625 F. App'x 552, 557 (Fed. Cir. 2015) (where the Board arguably erred in relying on a

particular piece of evidence, holding that, "[i]f there was error, it was harmless," because the Board "did not rely solely" on the evidence as to which error was alleged).

### B.   Substantial evidence supports the Board's finding that Numazaki teaches the claimed forward-facing portion.

**1.**  The claimed sensor and camera are part of the device housing's "forward facing portion."  Appx57 15:21-25 (claim 1); *see* OB14.  The Board correctly found that the forward-facing portion is taught by the combination of Numazaki's fifth and eighth embodiments—particularly, the former's sensor (reflected light extraction unit 102) and camera (visible light photo-detection array 351) combined on the latter's photo-detection sensor unit 702.  *See* Appx19-21; *see also* Appx16-17.

**2.**  Gesture Technology incorrectly argues that the Board's finding "is not supported by substantial evidence" because the Board insufficiently explained how "the sensor and camera are included on the *same* 'forward facing portion.'"  RB36-38 (emphases altered).  In reality, the Board addressed and rejected Gesture Technology's only argument that even remotely resembles this forfeited issue: "that the Petition wrongly contends that [the eighth embodiment's] photo-detection sensor

unit 702 … 'is or includes' one or both of Numazaki's [sensor] and [camera]." Appx19-20 (quoting Appx293); *see* Appx294-296. That was the sole challenge Gesture Technology presented to the Board on the forward-facing portion. *See* Appx280-317 (patent owner response); Appx363-379 (sur-reply). And, as the Board explained, that argument "mischaracterize[d] the proposed combination because [t]he Petition did not … depend on[] Numazaki expressly teaching that the eighth embodiment's laptop includes the fifth embodiment's components," but rather that a skilled artisan "would have been motivated to implement" them "into the laptop of the eighth embodiment." Appx19-20 (internal quotation marks omitted); *see* Appx341-343.

The Board can hardly be faulted for not providing a precise explanation regarding the "same portion" issue that Gesture Technology tees up for the first time on appeal. "A party forfeits an argument that it failed to present to the Board *because* it deprives the court of the benefit of the Board's informed judgment." *Schwendimann*, 82 F.4th at 1380 (emphasis added).

Moreover, Gesture Technology's argument does not pass muster even putting forfeiture aside. The Board did not need to make "a

particular determination" as to Gesture Technology's newfound issue "explicitly," because "'the path of the agency may be reasonably discerned.'" *Nucor Corp. v. United States*, 414 F.3d 1331, 1339 (Fed. Cir. 2005) (quoting *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987)); *accord Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998) (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).  The Board accepted not only that that Numazaki's sensor and camera are forward facing, Appx16-17; Appx21, but also that they work together by being "arranged in parallel and hav[ing] overlapping fields of view," Appx34. Naturally, then, the Board concluded that placing the two components together on the photo-detection sensor unit would involve incorporating them on the same forward-facing "portion"—a broad, unconstrued word—to maintain their configuration vis-à-vis each other.

## II.    Substantial Evidence Supports The Board's Finding Of Motivation To Combine For Claims 1-3, 5-10, And 12-17.

Gesture Technology next makes yet another flawed substantial-evidence challenge, this time to the Board's finding that a skilled artisan would have been motivated to combine Numazaki's third, fifth, and eighth embodiments based on Nonaka's teachings.  RB38-42; *cf. In*

*re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000) (motivation to combine

"is a pure question of fact … reviewed … for substantial evidence"). The

Board's finding is supported by substantial evidence. § II.A. Gesture

Technology fails to show otherwise. § II.B.

> ### A. Substantial evidence supports the Board's finding that a skilled artisan would have been motivated to combine Numazaki's embodiments based on Nonaka.

The Board correctly found that a skilled artisan would have been

motivated to combine Numazaki's embodiments based on Nonaka.

Appx28-29; *see* Appx15-16; Appx22-23. As the Board explained, Apple

had argued that a skilled artisan would have been motivated "to modify

the laptop of Numazaki's eighth embodiment to include the gesture

recognition of the third embodiment to initiate the video capture

functionality of the fifth embodiment as suggested by Nonaka's image

capture command gesture teachings." Appx22-23; *see* Appx15-16;

OB12-13. The Board accepted Apple's argument. Appx28-29.

Specifically, the Board found motivation to combine based on the

fact that a skilled artisan would have recognized from Nonaka that

using gestures to initiate video capture would "achieve a higher degree

of freedom, good portability, and cost benefits." Appx28-29; *see* Appx15-

16 (citing Appx138-139).  In other words, the Board found that a skilled

artisan would have recognized that "combining Numazaki's

embodiments as proposed would have improved Numazaki's portable

devices in the same way that Nonaka's gesture-based image capture

functionality benefits its camera device."  Appx15-16; *see* Appx29.  The

Board rendered this finding based on a careful examination and

discussion of Nonaka—which included the Board's crediting of Apple's

expert's testimony on the subject as "persuasive on the full record."

Appx29 (citing Appx139; Appx772-773 ¶ 49; Appx986 2:6-25); *see*

Appx27-28 (citing Appx1778-1781 ¶¶ 10-11).

**B.  Gesture Technology's challenges—which merely rehash factual arguments that the Board fully considered and rejected—are unavailing.**

Against the Board's well-supported motivation-to-combine finding,

Gesture Technology tries to reargue the facts.  But this Court's role does

not extend "to reweigh[ing] the evidence considered by the Board."

*Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994,

998 (Fed. Cir. 2020).  This Court should decline Gesture Technology's

requests that the Court do exactly that.  *See id.*; *In re Mulder*, 716 F.2d

1542, 1550 (Fed. Cir. 1983) ("To obtain reversal, appellants must clearly

explain why the board decision on [given] arguments is wrong, not merely repeat arguments made to the board hoping for a different result.").

**1.** Gesture Technology begins by arguing based on the inner workings of Numazaki's information input generation apparatus, which Gesture Technology calls the "IIGA." *See* RB38-40; Appx21. The IIGA is a component of various Numazaki embodiments, including the third, fifth, and eighth. *E.g.*, Appx941 4:41-54 (Numazaki's summary of invention); Appx944 10:21-27 (first embodiment); Appx955 32:24-28 (third embodiment); Appx959 39:21-23 (fifth embodiment); Appx964 50:19-24 (eighth embodiment); Appx966 53:22-36 (same); *see* Appx2247-2248 ¶ 44 (Apple's expert); Appx9-14 (Board's summary of Numazaki). As Apple's opening brief outlines, the fifth embodiment includes both the claimed sensor (reflected light extraction unit 102) and the claimed camera (visible photo-detection array 351) in its IIGA. OB7-10.

Gesture Technology passingly raises two objections related to combining IIGAs across Numazaki's embodiments, both of which are dispatched by the Board's analysis. *Compare* RB38-40, *with* Appx21-26.

First, in a single sentence, Gesture Technology accuses the Board of failing to "explain how the 'reflected light image' from the 'reflected light extraction unit 102' would be accessed by both 'shape interpretation unit 333' from the third embodiment and 'extraction unit 353' from the fifth embodiment or how these specialized units would operate simultaneously or whether different units would operate at different times or what that timing functionality would require."  RB39 (some internal quotation marks omitted); *cf. Malcolm v. United States*, No. 2023-1084, 2023 WL 5012116, at *5 (Fed. Cir. Aug. 7, 2023) (holding that a party "waived [an] argument by failing to sufficiently develop it beyond [a] single-sentence assertion").  Gesture Technology accused Apple of the same failure to explain before the Board, and the Board disagreed.  Appx23-24.  Instead, the Board accepted Apple's expert-supported explanation that the combination uses the third embodiment's gesture detection "as a trigger mechanism to initiate" the fifth embodiment's videoconferencing, thereby "setting forth precisely the timing relationship that [Gesture Technology] demands" by processing gesture recognition and videoconferencing "separately and sequentially."  Appx23 (citing Appx1773-1778 ¶¶ 3-9); *see* Appx24

(citing Appx1777-1778 ¶ 9). The Board "particularly credit[ed]" Apple's expert's "uncontroverted testimony" discussing in detail how a skilled artisan would have understood that "there [were] no [relevant] technical barriers" to the combination proposed. Appx24 (quoting Appx1777-1778 ¶ 9); *see* Appx1773-1778 ¶¶ 3-9. That was more than enough. *See Velander*, 348 F.3d at 1378 ("[I]t is not for us to second-guess the Board's assessment of the evidence.").

Second, Gesture Technology points to distinctions between the IIGAs employed by Numazaki's third, fifth, and eighth embodiments concerning feature generation unit 103. RB39-40. Gesture Technology argues that "[t]he Board provides no analysis for how a PHOSITA would combine these three different implementations." RB39. But the Board addressed the distinctions that Gesture Technology harps upon. Appx21-23; *see* Appx25-26. As to the core distinction that Gesture Technology raises—"that the IIGA in Numazaki's third embodiment is configured as 'a gesture camera,'" whereas "the IIGA in Numazaki's fifth embodiment is configured as 'a chromakey camera,'" Appx21-22— the Board found that Gesture Technology erred by focusing on Numazaki not disclosing a single embodiment "that includes both"

cameras.  Appx22-23.  The Board rejected Gesture Technology's focus because Apple's theory was obviousness, such that Apple did not need to point a single embodiment configured in the manner that Gesture Technology demanded.  Appx22-23; *see* Appx24-26 (invoking *Bos. Sci. Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 991 (Fed. Cir. 2009), which held a claim unpatentable for obviousness where all its limitations were dispersed between a prior-art reference's "two separate embodiments" and combining them would have been a predictable variation that a skilled artisan would have been motivated to pursue).  The Board then properly found the differences in the cameras to present no hurdle to obviousness based on its review of Numazaki and its consideration of Apple's expert testimony.  Appx24-26; *see* Appx21-23.

Beyond ignoring the Board's well-supported findings, both of Gesture Technology's IIGA-related arguments improperly confine the analysis to isolated disclosures in Numazaki while denying a skilled artisan recourse to ordinary skill, creativity, and common sense.  "To the extent that [Gesture Technology] is demanding bodily incorporation or is otherwise attempting to compartmentalize [Numazaki's] individual … teachings, it errs:  The 'test for obviousness is what the

*combined* teachings of the references would have suggested to' skilled artisans and 'does not require an actual, physical substitution of elements.'" *In re Universal Elecs., Inc.*, No. 2022-1716, 2023 WL 5219774, at *9 (Fed. Cir. Aug. 15, 2023) (quoting *In re Mouttet*, 686 F.3d 1322, 1332-33 (Fed. Cir. 2012)).  Thus, "any alleged incompatibility" between Numazaki's embodiments "would not preclude a motivation to combine." *Hologic, Inc. v. Minerva Surgical, Inc.*, 764 F. App'x 873, 880 (Fed. Cir. 2019); *see Packers Plus Energy Servs. Inc. v. Baker Hughes Oilfield Operations, LLC*, 773 F. App'x 1083, 1089 (Fed. Cir. 2019) ("Obviousness does not require the bodily incorporation of the teachings of one reference to another reference—an ordinary artisan has the capacity for ordinary creativity when combining references." (collecting cases)).

**2.**  Gesture Technology's remaining argument, concerning Numazaki's discussion of a TV telephone, is also correctly answered by the Board's decision.  *Compare* RB40-42, *with* Appx27-28.

Specifically, Gesture Technology contends that there would have been "no motivation to modify" Numazaki because its fifth embodiment "discloses extracting faces of speaking persons for transmission via a

'TV telephone.'" RB41 (citing Appx959 39:5-16). Gesture Technology's theory is that the telephone makes gesture signaling redundant. RB41-42. Gesture Technology contends that dialing a number with the telephone requires physical interaction with Numazaki's laptop, such that "the user would already be positioned in place for the videoconference" and would not need to make a remote cue via a gesture. RB41-42 (internal quotation marks omitted).

As the Board properly found and explained, "[t]his argument is not persuasive" for two overarching reasons. Appx27-28.

First, the argument's premise is unsound: "Numazaki's fifth embodiment is not limited to a TV telephone as the disclosure refers to 'the TV telephone, *for example*.'" Appx27 (emphasis added; quoting Appx959 39:12-13). For that reason, the Board was "not persuaded that an ordinarily skilled artisan would … understand Numazaki's disclosure as requiring the user to dial a telephone number." Appx27. On the contrary, the Board credited the extensive testimony from Apple's expert supporting "that one of ordinary skill in the art would have understood that there are many scenarios in which a user would not be sitting in front of the laptop to initiate a videoconference, such as

a lecturer standing for a lecture and a tutorial in which the speaker is demonstrating a product that requires a broader field of view than remaining seated before the camera." Appx27-28 (citing Appx1778-1781 ¶¶ 10-11).

Second, "even if Numazaki does suggest that the user would need to be within reach to physically interact with the laptop, this does not mean that one of ordinary skill in the art would not have recognized the advantages of using remote gestures taught by Nonaka." Appx28. "An obviousness analysis 'need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.'" Appx28 (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)).

Gesture Technology fails to address either of these independent obstacles foreclosing its attempt to resurrect its rejected factual theory.

## III. The Board Had Jurisdiction Over The Expired '949 Patent.

Finally, Gesture Technology argues that the Board could not exercise jurisdiction over Apple's challenge to the '949 patent, which

59

expired in May 2020, before Apple filed its petition in June 2021. *See* RB42-44.[5] Gesture Technology's position is unfounded.

Gesture Technology does not dispute that a patent "is 'a creature of statute law.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018) (quoting *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40 (1923)); *see* RB42-43. Yet Gesture Technology's view runs afoul of the governing statutory regime. The statutes that establish and define the inter partes review process make no mention of a patent's expiration date and do not expressly restrain inter partes review to non-expired patents, despite imposing other limitations. *Cf. Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) ("*Expressio unius est exclusio alterius.*"). For example, 35 U.S.C. § 311(b) sets forth the scope of inter partes review, and 35 U.S.C. § 311(c) governs the filing deadline for the process, but neither provision mentions the expiration date of

---

[5] Gesture Technology has raised this argument in at least three other pending cases. *See Apple Inc. v. Gesture Technology Partners, LLC*, Fed. Cir. Nos. 23-1475, -1533, Dkt. 28 at 55-57 (Oct. 26, 2023); *Gesture Technology Partners, LLC v. Apple Inc.*, Fed. Cir. No. 23-1463, Dkt. 19 at 31-33 (July 17, 2023); *Gesture Technology Partners, LLC v. Unified Patents, LLC*, Fed. Cir. No. 23-1444, Dkt. 12 at 28-29 (July 10, 2023).

the patent as a relevant consideration.  Likewise, 35 U.S.C. § 315 expressly limits inter partes reviews based on civil actions and the serving of complaints, but it too does not say a word about patent expiration.  In accord, the Patent Office's mandate for the "granting and issuing of patents" contains no suggestion that its authority ends at the expiration of a patent.  35 U.S.C. § 2(a)(1).  Gesture Technology addresses none of this.

Gesture Technology similarly fails to heed the Supreme Court's admonition that "[i]nter partes review is" a constitutionally compliant "'second look at an earlier administrative grant of a patent.'" *Oil States*, 138 S. Ct. at 1374-75 (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 279 (2016)); *accord MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1288-93 (Fed. Cir. 2015).  Gesture Technology provides no authority explaining why that second look should not apply equally to expired patents.  Meanwhile, the closest authority is to the opposite effect.  This Court has already rejected a constitutional challenge "to IPR as applied to patents issued prior to passage of the America Invents Act" brought by the owner of an expired patent. *Collabo Innovations, Inc. v. Sony Corp.*, 778 F. App'x 954, 957, 960-61

(Fed. Cir. 2019).  Although this Court did not explicitly refer to the patent's expiration in dispensing with that challenge, this Court explained that, when the patent issued, "patent owners … '[f]or forty years' had expected that 'the [Patent Office] could reconsider the validity of issued patents on particular grounds, applying a preponderance of the evidence standard,'" such that "application of IPR to [the] patent, on grounds that were available for Patent Office reconsideration when the patent was issued and under the same burden of proof, does not create a constitutional issue." *Id.* at 961 (quoting *Celgene Corp. v. Peter*, 931 F.3d 1342, 1362-63 (Fed. Cir. 2019)).[6]  That reasoning applies equally here and should control.

---

[6] Notably, beyond *Collabo*'s (and *Celgene*'s) discussion of "forty years" of Patent Office reconsideration of issued patents generally, the reexamination process has long involved review of expired patents specifically.  *See, e.g.*, *Ex Parte Motoren*, 1 U.S.P.Q.2d 1655, at *1-2 (B.P.A.I. 1986) (ex parte reexamination of an expired patent).  As the Patent Office set forth over forty years ago, "any person may, at any time during the period of enforceability of a patent, file a request for reexamination."  Manual of Patent Examining Procedure § 2211 (4th ed. July 1981) (citing 37 C.F.R. § 1.510(a) (1981)), https://tinyurl.com /z66kxx4n.  And that period includes when a patent has expired but is "still enforceable against someone."  *Id.* (explaining that the period includes "the 6 years after the end of the term during which infringement litigation may be instituted," as well as "after the statute of limitations has expired" if "litigation is instituted within … the

Rather than grapple with any of this, Gesture Technology engages in reasoning that fails on its own terms. Gesture Technology pins lack of jurisdiction on the assertion that, "[w]hen a patent expires," the public franchise "ceases to exist" and the patent owner "no longer has the right to exclude others." RB43. At the same time, however, Gesture Technology recognizes that the owner of an expired patent "may be entitled to collect damages from the public franchise that formerly existed through an infringement action in district court." RB43. By Gesture Technology's own logic, inter partes review should be allowed to determine whether the patent owner is allowed to exercise that right to sue. *See* RB43. Even in the expired-patent context, inter partes review "serves to protect 'the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope.'" *Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018) (quoting *Oil States*, 138 S. Ct. at 1374).

This Court's precedents confirm as much. In *Sony Corp. v. Iancu*, this Court reviewed a Board decision addressing an expired patent, and

---

statute of limitations"); *cf. id.* §§ 2249, 2250 (during reexamination of an expired patent, the patent owner may not propose amendments or new claims (citing 37 C.F.R. § 1.530(d) (1981))).

rejected the contention that the expiration undermined the Federal Circuit's power to adjudicate the matter for lack of a case or controversy under Article III.  924 F.3d 1235, 1239-41 (Fed. Cir. 2019).  This Court explained that "[i]t is well-established" that its decision "would have a consequence on any infringement that occurred during the life" of the patent.  *Id.* at 1238 n.1 (collecting cases).  For example, "an expired patent may form the basis of an action for past damages." *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011); *accord Sony*, 924 F.3d at 1238 n.1.  Thus, although a "patentee has fewer rights … when [its] patent has expired," the patentee nevertheless maintains some rights, *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1033 (Fed. Cir. 2015), including enforcement rights, *Sony*, 924 F.3d at 1238 n.1.  And consequently, Gesture Technology's position that patent expiration wholly terminates the public franchise represented by the patent, and thereby precludes inter partes review, is not correct.

The Board thus had jurisdiction to review the expired '949 patent.

## CONCLUSION

This Court should reverse or vacate the Board's determination that Apple did not prove claims 4, 11, and 18 unpatentable.  This Court should affirm the Board's decision in all other respects.

Respectfully submitted,

/s/ Stanley J. Panikowski         *
Stanley J. Panikowski
DLA PIPER US LLP
4365 Executive Drive, Suite 1100
San Diego, CA 92121

Matthew D. Satchwell
DLA PIPER US LLP, Suite 900
444 West Lake Street
Chicago, IL 60606

*Counsel for LG Electronics Inc.
and LG Electronics USA Inc.*

Respectfully submitted,

/s/ Erika Arner                   *
Erika Arner
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001

Daniel Cooley
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190

*Counsel for Google LLC*

Respectfully submitted,

/s/ Robbie Manhas
Robbie Manhas
Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

Adam P. Seitz
Clifford T. Brazen
ERISE IP, P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211

Paul R. Hart
Erise IP, P.A.
5299 DTC Blvd.
Suite 1340
Greenwood Village, CO 80111

*Counsel for Apple Inc.*

* Counsel have consented to the use of their electronic signatures
herein.

November 27, 2023

# CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b) because this brief contains 11,941 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Robbie Manhas*
Robbie Manhas
*Counsel for Appellant Apple Inc.*