No. 2023-1501, -1554

---

# United States Court of Appeals for the Federal Circuit

---

**APPLE, INC.,**

*Appellant,*

**LG ELECTRONICS INC., LG ELECTRONICS USA, INC., GOOGLE LLC,**

*Appellees,*

*v.*

**GESTURE TECHNOLOGY PARTNERS, LLC**

*Cross-Appellant.*

---

Appeal from the United States Patent and Trademark Office in *Inter Partes* Review Nos. IPR2021-00921, IPR2022-00092, and IPR2022-00362 – U.S. Patent No. 8,878,949

---

## REPLY BRIEF OF CROSS-APPELLANT GESTURE TECHNOLOGY PARTNERS, LLC

/s/ Fred I. Williams
Fred I. Williams
WILLIAMS SIMONS & LANDIS PLLC
601 Congress Ave., Suite 600
Austin, TX 78701
Tel. 512.543.1354

John Wittenzellner
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A#453
Philadelphia, PA 19103
Tel: 512.543.1373

January 17, 2024

COUNSEL FOR CROSS-APPELLANT GESTURE TECHNOLOGY PARTNERS, LLC

## PATENT CLAIMS AT ISSUE

## U.S. Patent No. 8,878,949

**1.** A portable device comprising:

a device housing including a forward facing portion, the forward facing portion of the device housing encompassing an electro-optical sensor having a field of view and including a digital camera separate from the electro-optical sensor; and

a processing unit within the device housing and operatively coupled to an output of the electro-optical sensor, wherein the processing unit is adapted to:

determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output, and

control the digital camera in response to the gesture performed in the electro-optical sensor field of view, wherein the gesture corresponds to an image capture command, and wherein the image capture command causes the digital camera to store an image to memory.

**2.** The portable device of claim 1 wherein the determined gesture includes a hand motion.

**3.** The portable device of claim 1 wherein the determined gesture includes a pose.

**4.** The portable device of claim 1 wherein the electro-optical sensor is fixed in relation to the digital camera.

**5.** The portable device of claim 1 further including a forward facing light source.

**6.** The portable device of claim 1 wherein the electro-optical sensor defines a resolution less than a resolution defined by the digital camera.

**7.** The portable device of claim 1 wherein the electro-optical sensor includes at least one of a CCD detector and a CMOS detector.

**8.** A computer implemented method comprising:

providing a portable device including a forward facing portion encompassing a digital camera and an electro-optical sensor, the electro-optical sensor having an output and defining a field of view;

determining, using a processing unit, a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output, wherein the determined gesture corresponds to an image capture command; and

capturing an image to the digital camera in response to the determined gesture corresponding to the image capture command.

**9.** The method according to claim 8 wherein the determined gesture includes a hand motion.

**10.** The method according to claim 8 wherein the determined gesture includes a pose.

**11.** The method according to claim 8 wherein the electro-optical sensor includes first and second sensors in fixed relation relative to the digital camera.

**12.** The method according to claim 8 wherein the electro-optical sensor defines a resolution less than a resolution defined by the digital camera.

**13.** An image capture device comprising:

a device housing including a forward facing portion, the forwarding facing portion encompassing a digital camera adapted to capture an image and having a field of view and encompassing a sensor adapted to detect a gesture in the digital camera field of view; and

a processing unit operatively coupled to the sensor and to the digital camera, wherein the processing unit is adapted to:

detect a gesture has been performed in the electro-optical sensor field of view based on an output of the electro-optical sensor, and

correlate the gesture detected by the sensor with an image capture function and subsequently capture an image using the digital camera, wherein the detected gesture is identified by the processing unit apart from a plurality of gestures.

**14.** The image capture device of claim 13 wherein the detected gesture includes a hand motion.

**15.** The image capture device of claim 13 wherein the detected gesture includes a pose.

**16.** The image capture device of claim 13 further including a forward facing light source.

**17.** The image capture device of claim 13 wherein the sensor defines a resolution less than a resolution defined by the digital camera.

**18.** The image capture device of claim 13 wherein the sensor is fixed in relation to the digital camera.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1501,-1554

**Short Case Caption** Apple Inc. v. Gesture Technology Partners, LLC

**Filing Party/Entity** Gesture Technology Partners, LLC

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/17/2024

Signature: /s/ Fred I. Williams

Name: Fred I. Williams

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Gesture Technology Partners, LLC | N/A | N/A |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| See Attachment A | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**Attachment A to Certificate of Interest:**

**5. Related Cases.**

- *Gesture Technology Partners, LLC v. Apple Inc.*, 4:22-cv-04806-YGR (U.S. District Court for the Northern District of California)
- *Gesture Technology Partners, LLC v. Motorola Mobility LLC*, 1:22-cv-03535 (U.S. District Court for the Northern District of Illinois)
- *Gesture Technology Partners, LLC v. LG Electronics Inc. et al.*, 2:21-cv-19234-EP-MAH (U.S. District Court for the District of New Jersey)
- *Ex Parte* Reexamination No. 90/014,903 of U.S. Patent No. 8,878,949, before the United States Patent and Trademark Office (reexam ordered December 2, 2021).

# TABLE OF CONTENTS


STATEMENT OF RELATED CASES ........ 1

SUMMARY OF THE ARGUMENT ........ 2

ARGUMENT ON PATENT OWNER'S CROSS-APPEAL ........ 3

I. The Board's Determination That Claims 1-3, 5-10, and 12-17 Are Unpatentable Is Not Supported by Substantial Evidence ........ 3

1. *Numazaki* Does Not Teach the "Electrical-Optical Sensor" ........ 3

2. *Numazaki* Does Not Teach the "Forward-Facing Portion" ........ 5

3. A PHOSITA Would Not Have Been Motivated to Combine *Numazaki's* Embodiments Based on *Nonaka* ........ 7

4. A PHOSITA Would Not Have Combined Elements From Three Separate Implementations of *Numazaki* ........ 8

II. The USPTO Does Not Have Jurisdiction Over The Expired '949 Patent ........ 10

CONCLUSION ........ 11

# 5TABLE OF AUTHORITIES

## Cases

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
138 S. Ct. 1365 (2018)........................................................................10

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee Gesture Technology Partners, LLC states that no other appeal in or from the same civil action in the lower court was previously before this or any other appellate court.

Cases pending in this or any other court which will directly affect or be directly affected by this Court's decision in the pending appeal are listed below.

- *Gesture Technology Partners, LLC v. Apple Inc.,* Case No. 4:22-cv-04806 (N.D. Cal.)
- *Gesture Technology Partners, LLC v. LG Electronics, Inc.,* Case No. 2:21-cv-19234 (D.N.J.)
- *Gesture Technology Partners, LLC v. Motorola Mobility LLC,* Case No. 1:22-cv-03535 (N.D. Ill.)
- *Gesture Technology Partners, LLC v. Lenovo Grp. Ltd. et al.*, Case No. 6:21-cv-00122 (W.D. Tex.)
- *In re: Gesture Technology Partners, LLC*, Case No. 2024-1038 (Fed. Cir.)

# SUMMARY OF THE ARGUMENT

As articulated in Patent Owner's opening cross-appeal brief, the Board made several erroneous findings, unsupported by substantive evidence, that compel reversal. As to Petitioner's rebuttal arguments, they are all unavailing. The Board's determination that claims 1-3, 5-10, and 12-17 of the '949 Patent are unpatentable over *Numazaki* and *Nonaka* is not supported by substantial evidence.

First, a PHOSITA would not have understood *Numazaki's* "reflected light extraction unit" as being the claimed "electro-optical sensor." Second, the Board failed to explain why Petitioner's proposed modification would result in *Numazaki's* "reflected light extraction unit" and "visible light photo-detection array" being located on the same "forward facing portion" of *Numazaki's* laptop. Third, *Numazaki* and *Nonaka* do not render obvious claim element [1(c)] because a PHOSITA would not have combined *Numazaki* and *Nonaka* based on the user's proximity to the laptop. Fourth, *Numazaki* and *Nonaka* do not render obvious claim element [1(b)] because a PHOSITA would not combine elements from the third, fifth, and eighth embodiments. Accordingly, the Board's decision that claims 1-3, 5-10, and 12-17 of the '949 Patent are unpatentable should reversed.

Finally, the USPTO does not have jurisdiction over expired patents. The '949 Patent expired before the IPR Petition was filed. Under *Oil States*, when a patent expires, the public franchise ceases to exist and the franchisee (e.g., the patent

owner) no longer has the right to exclude others. Accordingly, the FWD should be vacated because the Petition was filed after the expiration of the ’949 Patent.

## ARGUMENT ON PATENT OWNER’S CROSS-APPEAL

### I. THE BOARD’S DETERMINATION THAT CLAIMS 1-3, 5-10, AND 12-17 ARE UNPATENTABLE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

First, the Board’s determination that *Numazaki* teaches the “electro-optical sensor” is not supported by substantial evidence because a PHOSITA would not have understood *Numazaki’s* “reflected light extraction unit” as being the claimed “electro-optical sensor.” Second, the Board provides no explanation as to how *Numazaki’s* “forward facing portion” includes the “reflected light extraction unit” and “visible light photo-detection array.” Third, there is no motivation to modify *Numazaki* based on *Nonaka*’s teachings because a PHOSITA would recognize that a user would be within reach of *Numazaki’s* laptop before and during a videoconference enabled by *Numazaki’s* laptop. Fourth, a PHOSITA would not have combined the third embodiment, fifth embodiment and eighth embodiment,

#### 1. *Numazaki* Does Not Teach the “Electrical-Optical Sensor.”

Petitioner argues that the Board’s decision is supported by substantial evidence because *Numazaki* supposedly teaches the “electro-optical sensor.” Response Br. 38-48. Petitioner parrots the language of the FWD, but the Board’s finding that a PHOSITA would have understood *Numazaki’s* “reflected light

extraction unit 102" to be the claimed "electro-optical sensor" is incorrect. *See* Appx17-19.

Most glaringly, the Board erred by finding that "photo-detection units 109, 110 are electro-optical sensors." Appx18. That is wrong – a PHOSITA would not consider an electro-optical sensor to consist of electro-optical sensors. *See* Appx1986-1987 ¶ 45. Stated differently, because the Board found the "reflected light extraction unit 102" to be an electro-optical sensor, the Board's position is that an electro-optical sensor (reflected light extraction unit) consists of one or more electro-optical sensors (photo-detections units). That finding is erroneous because it is undisputed that "photo-detection units 109, 110" are components of "reflected light extraction unit 102." Appx17 (citing Appx293, Appx366, and Appx1985-1987 ¶¶ 44-45).

This argument was never forfeited as Petitioner asserts, and it is technically sound. Petitioner attempts to deflect from the seriousness of the Board's error by stating that the Board's finding was taken out of context and "even if" the Board relied on an erroneous admission, its error was harmless. Response Br. 47-48. Those arguments fail because the Board's reasoning that a PHOSITA would consider an electro-optical sensor to consist of electro-optical sensors is flawed.

Petitioner complains that there was no claim construction of the term "electro-optical sensor," and it asserts that Patent Owner's expert provides an unelaborated

assertion. Response Br. 41-43. No claim construction of "electro-optical sensor" was needed, and the Board adopted the plain meaning. Appx18. The problem is that a PHOSITA would not understand the two separate photodetection units having specific timing and lighting requirements and a difference calculation unit as meeting the plain meaning of "electro-optical sensor." *See* Appx1986-1987 ¶ 45.

The Board's determination is unsupported by substantial evidence because the Board focused on one core functionality and found that *Numazaki's* "reflected light extraction unit 102" must be an "electro-optical sensor" because it senses light and converts the sensed light into electronic signals. Appx18. This determination is erroneous because the "reflected light extraction unit 102" consists of one or more photo-detections units (i.e., electro-optical sensors), thus *Numazaki's* "reflected light extraction unit 102" cannot itself be the claimed "electro-optical sensor." *See* Appx1986-1987 ¶ 45.

As a result, the Board's determination that *Numazaki's* "reflected light extraction unit 102" renders obvious the "electro-optical sensor" limitation of claim element [1(a)] is not supported by substantial evidence.

#### 2. *Numazaki* Does Not Teach the "Forward-Facing Portion."

Petitioner also argues that the Board's decision is supported by substantial evidence because *Numazaki* teaches the "forward-facing portion." Response Br. 48-

50. But the Board provides no analysis of how the sensor and camera are included on the "forward facing portion" of the device housing. *See* Appx6-38.

Petitioner argues that the Board found that the sensor and camera are on the same "forward-facing portion" because the sensor and camera have "overlapping fields of view." Response Br. 50. That argument is unsupported and relies on an impermissibly broad definition of "portion" to conclude that the sensor and camera are included on the same "forward facing portion" of the device housing.

Petitioner incorrectly asserts that Patent Owner forfeited this same-portion argument. Response Br. 49. But Patent Owner properly raised this argument in response to the Petition and has rightfully appealed. Appx308-314.

Petitioner contends that *Numazaki's* "reflected light extraction unit 102" is the claimed electro-optical sensor and that "[*Numazaki's*] 'visible light photo-detection array 351' is [the] digital camera as claimed." Response Br. 48; Appx146. The Board does not explain how the Petitioner-identified sensor and camera are both on the "forward facing portion" of the device housing. *See* Appx19-20. Instead, the Board provides no analysis of how the camera and sensor are on the same portion. *See id.* The Board merely states that a PHOSITA would "implement" the components "into the laptop of the eighth embodiment." *Id.* That lack of analysis fails to meet the necessary substantial evidence standard on appeal.

Accordingly, the Board's determination that *Numazaki* renders obvious the recited "forward facing portion" that requires a sensor and a camera of claim element [1(a)] is not supported by substantial evidence.

### 3. A PHOSITA Would Not Have Been Motivated to Combine *Numazaki's* Embodiments Based on *Nonaka.*

Petitioner argues that the Board correctly found that a skilled artisan would have been motivated to combine *Numazaki's* embodiments based on *Nonaka*. Response Br. 51-52. But a PHOSITA would not have combined *Numazaki* and *Nonaka* because a user would be in reach of *Numazaki's* laptop before and during a videoconference enabled by *Numazaki's* laptop. Appx303-304 (citing Appx1997-1998 ¶¶ 62–63). A PHOSITA "would recognize that to dial the telephone number, the user must physically interact with *Numazaki's* laptop (e.g., keyboard), and thus the user would *already* be positioned 'in place' for the videoconference." Appx303 (citing Appx959, 39:5–16; Appx1997 ¶62). Meanwhile, *Nonaka's* teachings, and its alleged benefits, apply when the subject of the photograph must stand beyond the reach of the camera to take a photograph. Appx1003, Fig. 3. Thus, a PHOSITA would not combine the laptop of *Numazaki* with the camera of *Nonaka*.

Accordingly, the Board's determination that *Numazaki* or *Nonaka* teach the single gesture limitation of claim element [1(c)] is not supported by substantial evidence.

### 4. A PHOSITA Would Not Have Combined Elements From Three Separate Implementations of *Numazaki.*

Petitioner argues that a PHOSITA would insert the entire information input generation apparatus ("IIGA") from the fifth embodiment in *Numazaki* into the eighth embodiment, then add the feature data generation unit configured for gesture recognition of the IIGA from the third embodiment into the eighth embodiment. *See* Response Br. 52-59. But the Board provides no reasoning for why a PHOSITA would combine these three different implementations given the specialized units of the feature data generation units (shown in Figures 23 and 46) and the fact that certain embodiments operate as a gesture camera while others operate as a chromakey camera. *See* Appx861, Fig. 23; Appx883, Fig. 46; Appx954, 29:4–10; Appx959, 39:17–23.

Petitioner complains that Patent Owner's single-sentence assertion that the Board does not explain how the "reflected light image" from the "reflected light extraction unit 102" would be accessed by both "shape interpretation unit 333" from the third embodiment and "extraction unit 353" from the fifth embodiment" or "how these specialized units would operate simultaneously or whether different units would operate at different times or what that timing functionality would require" is not sufficiently developed to overcome the Board's reliance on Petitioner's expert broad statement that there were no "technical barriers" to the proposed combination.

Response Br. 54-55; *see* Appx23-25. Although Petitioner points to a single sentence in Patent Owner's brief, the surrounding sentences regarding the Board's improper combination of three embodiments fully develop the argument. Patent Owner Opening Br. 38-40. Specifically, the fully developed argument recites:

> The Board incorrectly found that a PHOSITA would insert the entire information input generation apparatus ("IIGA") from the fifth embodiment into the eighth embodiment, then add the feature data generation unit configured for gesture recognition of the IIGA from the third embodiment into the eighth embodiment. *See* Appx21-26.
>
> The Board does not explain how the "reflected light image" from the "reflected light extraction unit 102" would be accessed by both "shape interpretation unit 333" from the third embodiment and "extraction unit 353" from the fifth embodiment" or "how these specialized units would operate simultaneously or whether different units would operate at different times or what that timing functionality would require." *See* Appx23-25.
>
> The Board failed to provide insight on how a PHOSITA would understand to combine the multiple disclosures of *Numazaki*. *Numazaki* discloses that the IIGA
> includes a feature data generation unit 103. Appx942, 5:10–12; Appx840, Fig. 2. *Numazaki*'s third embodiment, discloses that the IIGA is configured as "a gesture camera" by implementing the feature input generation apparatus and feature data generation unit. Appx942, 6:4–7; Appx954, 29:4–10; Appx861, Fig. 23. *Numazaki's* fifth embodiment, discloses that the IIGA is configured as "a chromakey camera" by implementing the IIGA of Figure 2 with feature data generation unit 103 and visible light photo-detection array 351 depicted in Figure 46. Appx959, 39:17–23; Appx883, Fig. 46; Appx1992-1993 ¶ 54. *Numazaki's* eighth embodiment, discloses a computer with an IIGA. Appx911, Fig. 74; Appx959, 50:21-26. The Board provides no analysis for how a PHOSITA would combine these three different implementations given the specialized units of the feature data generation units (shown in Figures 23 and 46) and the fact that certain embodiments operate as a gesture camera while others operate as a

> chromakey camera. *See* Appx861, Fig. 23; Appx883, Fig. 46; Appx954, 29:4–10; Appx959, 39:17–23.

*Id.*

Ultimately, the Board failed to provide insight on how a PHOSITA would understand to combine *Numazaki's* third embodiment (IIGA configured as "a gesture camera") with *Numazaki's* fifth embodiment (IIGA is configured as "a chromakey camera") and *Numazaki's* eighth embodiment (a computer with an IIGA) to render obvious claim element [1(b)]. *See* Appx21-26.

Accordingly, the Board's determination that a PHOSITA would have combined elements from *Numazaki's* third, fifth, and eighth embodiments to render limitation of claim element [1(b)] is not supported by substantial evidence.

## II. THE USPTO DOES NOT HAVE JURISDICTION OVER THE EXPIRED '949 PATENT.

Petitioner states that 35 U.S.C. §§ 311 and 315 are silent on whether the *inter partes* review process is available for expired patents. Response Br. 60-61. The fact that Sections 311 and 315 do not address expired patents does not change the fact that when a patent expires the public franchise ceases to exist and the franchisee no longer has the right to exclude others. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018). Because the public franchise no longer exists, the Patent Office has nothing in its authority to cancel or amend an expired patent. Petitioner does not dispute this logic.

Instead, Petitioner ignores the effects that the cessation of the public franchise has on the USPTO's jurisdiction of an expired patent and argues that the statutes on IPRs do not "expressly restrain inter partes review to non-expired patents." *See* Response Br. 60. Petitioner also argues that the USPTO should have jurisdiction of expired patents because there have been reexaminations of expired patents, and the owner of an expired patent may be able to collect damages. *See* Response Br. 61-62. Those arguments fail because the public franchise no longer exists, there is no statute that expressly authorizes *inter partes* review of expired patents, and the owner of an expired patent no longer has the right to amend.

At bottom, the Board does not have jurisdiction over the '949 Patent because the '949 Patent expired in May 2020, long before the Petition was filed in June 2021. Thus, the FWD should be vacated.

## **CONCLUSION**

For the foregoing reasons, Patent Owner respectfully submits that the Court should reverse the Board's determination that claims 1-3, 5-10, and 12-17 of the '949 Patent are unpatentable and vacate the Board's determination because the Board does not have jurisdiction over the expired '949 Patent.

Dated: January 17, 2024

Respectfully submitted,

By: */s/ Fred I. Williams*

Fred I. Williams
*Principal Attorney*
fwilliams@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
The Littlefield Building
601 Congress Ave., Suite 600
Austin, Texas 78701
512.543.1354 telephone

John Wittenzellner
johnw@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite 125
Philadelphia, PA 19103
512.543.1373 telephone

COUNSEL FOR APPELLEE GESTURE
TECHNOLOGY PARTNERS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on January 17, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 17, 2024

*/s/ Fred I. Williams*
Fred I. Williams

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-1501, -1554

**Short Case Caption:** Apple Inc. v. Gesture Technology Partners, LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 2,247 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ____________ lines of text.
- [ ] the filing contains ____________ pages / ____________ words / ____________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ____________).

Date: 01/17/2024

Signature: /s/ Fred I. Williams

Name: Fred I. Williams

Save for Filing